UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERIC DECAVA, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil No. 3:17-cv-1834 (MPS) |
| | : | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY | : | |
| | : | |
| | : | |
| | : | |
| *Defendant*. | : | |

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

In this appeal from the Social Security Commissioner's denial of benefits, Eric DeCava argues that the Administrative Law Judge ("ALJ") (1) insufficiently developed the record; (2) violated the treating source rule; (3) made unsupported vocational findings; and (4) did not adequately evaluate his claims of pain. ECF No. 20-2. I find that the ALJ insufficiently developed the record. On remand, the ALJ must develop the record and reevaluate Mr. DeCava's residual functional capacity assessment and subjective complaints in light of the new record. I do not reach Mr. DeCava's remaining claims.

### I. Procedural History, Facts, and Legal Standards

I assume the parties' familiarity with Mr. DeCava's medical history (summarized in a stipulation of facts filed by the parties, ECF No. 20-1, which I adopt and incorporate herein by reference), the ALJ opinions, the record, and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

1

However, because this case has a long procedural history, I recount relevant portions of it here. Mr. DeCava filed an application for Disability Insurance Benefits under Title II of the Social Security Act in November 2010. ECF No. 20-1 at 1. The application was denied as was reconsideration. *Ibid*. ALJ Groeneveld-Meijer held a hearing on March 21, 2013 and denied Mr. DeCava's claim shortly thereafter. *Ibid*. The matter then came to this Court for the first time. *Id*. at 2. The Commissioner filed a consent motion for reversal and remand which the Court granted in early 2015. *Ibid*. On remand, the ALJ was required to "give Plaintiff the opportunity for a new hearing and to submit additional evidence"; "reassess Plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations"; "ensure that the residual functional capacity assessment includes limitations corresponding to Plaintiff's severe and non-severe impairments"; "evaluate Plaintiff's subjective complaints and provide rationale in accordance with 20 C.F.R. § 404.1529 and SSR 96-7p"; and "obtain vocational expert testimony to clarify the effect of the assessed limitations on Plaintiff's occupational base." R. 1058.

On remand, additional medical files were added to the record, R. 1155-1416, and ALJ Thomas held a second hearing on March 23, 2017, R. 975-1004. Mr. DeCava's claim was denied for a second time on July 25, 2017. R. 950-60. Specifically, ALJ Thomas found that Mr. DeCava had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) except that he could occasionally bend, balance, twist, squat, kneel, crawl, and climb, but no climbing of ladders, ropes, or scaffolds; avoid hazards such as dangerous machinery, heights, or vibration, but driving is okay; use of a cane for walking; an environment free from excessive noise; left eye blindness." R. 954. After hearing testimony from a vocational

expert, he found that there were sufficient jobs available in the national economy that Mr. DeCava could perform, such as cashier and information clerk. R. 959-60. This appeal followed.

## II. Standard of Review

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). As such, the Commissioner's decision "may be set aside only due to legal error or if it is not supported by substantial evidence." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 302–03 (D. Conn. 2010). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

## III. Discussion

### A. Failure to Develop the Record

Mr. DeCava argues that the ALJ erred by failing to secure a medical source statement regarding his functional capacity as "none of the contemporaneous medical records from any of Mr. DeCava's treating physicians in any meaningful way address his actual functional limitations – what he can and cannot do on a function-by-function basis." ECF No. 20-2 at 6. I agree.

"[A] large body of case law hold[s] that an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Staggers v. Colvin*, 2015 WL 4751123, at *2 (D. Conn. Aug. 11, 2015) (internal quotation marks and citations omitted). Where there is such an absence of supporting medical opinion, the ALJ has an "affirmative duty to request RFC

assessments from a plaintiff's treating sources." *Felder v. Astrue*, 2012 WL 3993594, at *11 (E.D.N.Y. Sept. 11, 2012); *see also Marshall v. Colvin*, 2013 WL 5878112, at *9 (W.D.N.Y. Oct. 30, 2013) (finding that a record with "extensive medical documentation" was insufficient because "it lacked any statement from Plaintiff's treating physicians . . . regarding her functional abilities"); *Aceto v. Commr. of Soc. Sec.*, 2012 WL 5876640, at *16 (N.D.N.Y. Nov. 20, 2012) ("Since the ALJ had nothing more than treatment records and consultative reports to review, he had an affirmative duty to develop the record and request that Plaintiff's treating physicians assess her RFC.").

However, remand is not required when an ALJ fails to request RFC assessments if "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Commr. of Soc. Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) (unpublished). In *Tankisi*, for instance, remand was not warranted because "the ALJ had a number of functional assessments from consultative examiners and some form of functional assessment from a treating source" even though there were no formal RFC assessments. *Staggers*, 2015 WL 4751123, at *3. So while "it is not *per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician, a decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity." *Downes v. Colvin*, 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015) (internal quotation marks and citations omitted). Accordingly, "courts have upheld an ALJ's RFC finding only where the record is clear and, typically, where there is *some* useful assessment of the claimant's limitations from a medical source." *Staggers*, 2015 WL 4751123, at *3. This is not such a case.

Here, the ALJ determined that Mr. DeCava "had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he could occasionally bend, balance, twist, squat, kneel, crawl, and climb, but no climbing of ladders, ropes, or scaffolds; avoid hazards such as dangerous machinery, heights, or vibration, but driving is okay; use of a cane for walking; an environment free from excessive noise; left eye blindness." R. 954. According to the regulations, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). This RFC assessment is not supported by substantial evidence: not only are there no functional assessments from a treating physician, but the medical opinions that do exist in the record do not support the ALJ's assessment.

Indeed, the first three medical opinions reviewed by the ALJ do not contain functional assessments at all. The ALJ noted that Dr. Hasenfeld's opinion "does not provide a function-by-function explanation and [] is too vague to be persuasive." R. 958. Opinions by Dr. Tarkhan and PA Barlow were similarly devoid of a function-by-function analysis; indeed, the ALJ gave "no weight" to Dr. Tarkhan's statement that Mr. DeCava is "unable to work and is disabled," R. 825, and "no weight" to PA Barlow's statement that Mr. DeCava "will most likely never be able to be gainfully employed," R. 840, because these overarching determinations are "issues reserved to the Commissioner," R. 958, rather than functional assessments. [1]

---

[1] While the ALJ was not required to credit these statements on "issues reserved to the Commissioner," R. 958, they do suggest a need to inquire further to understand *why* these

5

In addition, the functional assessments that do exist in the record do not support the ALJ's RFC assessment, and therefore do not constitute substantial evidence in its favor. A Connecticut Social Services form submitted by PA Barlow is one such assessment. R. 865-873. The ALJ discounted this assessment, noting that a physicians' assistant submitted the form and "[t]here is no indication that the claimant sees [the doctor]" who co-signed the form. R. 958. Moreover, the ALJ did not credit the assessment on the form that Mr. DeCava could not lift or carry any weight and should be limited to no postural maneuvers. R. 958. To the contrary, the ALJ found that he could perform sedentary work, thereby implicitly finding that Mr. DeCava could lift up to 10 pounds. *See* 20 C.F.R. 404.1567(a).

The other RFC assessments in the record are part of the disability determination explanations. R. 124-125 & 137-139. The ALJ says only that he "considered" these opinions without specifying the amount of weight accorded to each one. R. 958. A review of the assessments, however, demonstrate that they do not provide substantial evidence for the ALJ's RFC determination. For instance, both agency opinions state that Mr. DeCava does not have visual limitations, R. 125, 138 & 139, while the ALJ's assessment includes "left eye blindness," R. 954. And one of the agency opinions notes that Mr. DeCava can occasionally climb ladders, ropes, and scaffolds, R. 138, while the ALJ's assessment expressly states "no climbing of ladders, ropes, or scaffolds," R. 954. As such, these functional assessments do not constitute substantial evidence in support of the ALJ's RFC assessment.

Other components of the ALJ's RFC assessment also lack support from medical opinion evidence concerning Mr. DeCava's functional limitations. For instance, the ALJ found that Mr.

---

medical sources believed Mr. DeCava did not have the functional capacity to work—at least where there was no function-by-function analysis from either source.

6

DeCava could "occasionally bend, balance, twist, squat, kneel, crawl, and climb." R. 954. However, he does not identify a medical opinion to support this level of functional capacity, and the Court's review of the record does not reveal one. Moreover, it appears that the few references in the medical records that do exist support a more restrictive determination: Dr. Anand stated that "[b]ending, rotating, and activity exacerbates his pain," and that "[b]ending and sitting worsens his pain," R. 504, while PA Barlow noted that Mr. DeCava could "never" bend, squat, crawl, climb, or reach. R. 868.

The ALJ's determination that Mr. DeCava has the capacity to perform sedentary work, which requires "occasionally lifting or carrying articles like docket files, ledgers, and small tools," is also unsupported by substantial evidence. Although the ALJ points to Mr. DeCava's statement at the hearing that he could lift "[t]en pounds, maybe," R. 981, he does not reconcile that testimony with Mr. DeCava's other statements that "[he doesn't] have the strength or the mobility to like turn screwdrivers, hold the nails, or even to swing the hammer, it would slip out of [his] hand," R. 989, "a big pot of water [he] couldn't lift it and strain it," R. 995, and "[he] drop[s] simple glasses all the time because [he] can't feel [his] fingers," R. 995. The ALJ's assessment is also contradicted by Dr. Hasenfeld's assessment that Mr. DeCava "is not able to lift" and "has a numb right arm," R. 573, and PA Barlow's note that he could not lift or carry any weight, R. 868.

In sum, there are no functional assessments from a treating physician, and the other medical opinions that do include functional assessments do not provide substantial evidence for the ALJ's RFC determination.[2]

---

[2] The Commissioner cites *Micheli v. Astrue*, 501 Fed.Appx. 26, 29-30, 2012 WL 5259138 (2d Cir. 2012) for the proposition that "because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides

7

Despite the lack of support from functional assessments, the Commissioner argues that the record contains substantial evidence to support the ALJ's RFC assessment as "the ALJ had a significant medical record at his disposal" and "obtained over a thousand of pages of detailed clinical notes from Plaintiff's treating physicians in a record totaling over 1400 pages." ECF No. 22 at 9. However, even where the ALJ obtains "voluminous records," he "cannot substitute his opinion for that of the treating physician." *Peed v. Sullivan*, 778 F. Supp. 1241, 1247 (E.D.N.Y. 1991); *see also Holt v. Colvin*, 2018 WL 1293095, at *7 (D. Conn. Mar. 13, 2018) (finding that an extensive record containing nearly 1,000 pages of medical evidence was insufficient because "the real import lies in *what* those 1,000 pages say" and "[n]ot one treating physician opined about Plaintiff's functional limitations with respect to her ability to work"). Treating physician opinions "are all but controlling in an SSI application" and the ALJ cannot "replace the diagnosis of the doctor who knows the patient best with his own reading of the claimant's history." *Peed*, 778 F. Supp. at 1247; *see also Hallett v. Astrue*, 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) ("Because the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder, it is not sufficient for the ALJ simply to secure raw data from the treating physician."). Thus, "[t]o obtain from a treating physician nothing more than charts and

---

sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent." EFC No. 22 at 9-10. Unlike *Micheli*, "where the record provide[d] sufficient evidence for [] a resolution," the record in this case does not provide sufficient evidence for the ALJ to determine whether Mr. DeCava is disabled. As discussed, the evidence in the record is not merely *inconsistent*; rather, it is *insufficient* to support the ALJ's RFC assessment. This insufficiency is further underscored by the fact that all the medical opinions discussed by ALJ Thomas were part of the record when the Commissioner acknowledged that "further development of the record" was warranted, 14-cv-1053, ECF No. 17 at 1-2, and the Court remanded with instructions "to submit additional evidence," R. 1058. Although additional medical records were submitted on remand, they are primarily hospital records and progress notes—they do not contain any assessments of functional limitations.

laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so . . . reliable." *Hallett*, 2012 WL 4371241, at *6. The lengthy medical record in this case therefore does not relieve the ALJ of his duty to seek medical opinions.[3]

Remand for further development of the evidence is warranted. *Id*. at *7 ("Where the ALJ fails to fulfill the duty to develop the record, the reviewing district court should reverse the Commissioner's decision and remand the appeal from the Commissioner's denial of benefits for further development of the evidence."); *Jermyn v. Colvin*, 2015 WL 1298997, at *20 (E.D.N.Y. Mar. 23, 2015) ("On remand, the ALJ is directed to develop the record as it relates to Plaintiff's physical impairment by obtaining RFC assessments from medical sources, including Plaintiff's treating physicians."). On remand, the ALJ shall develop the record by requesting a medical source statement or other assessment of functional limitations from a treating or examining physician.

### B. Reevaluation on Remand

The ALJ's assessments of Mr. DeCava's residual functional capacity and credibility were made in the absence of medical opinions by treating physicians. As such, the assessments may change in light of additional evidence, and the ALJ is directed to reevaluate both on remand. *See Sanders v. Commr. of Soc. Sec.*, 506 Fed. Appx. 74, 78 (2d Cir. 2012) (unpublished) ("The ALJ

---

[3] The Commissioner further argues that the ALJ was not obligated to further develop the record because Mr. DeCava was afforded "consultative examinations" and "was represented by counsel throughout his case." ECF No. 22 at 9. The two consultative examinations the Commissioner cites, however, were completed in 2011—before the case was remanded for further development of the record. Additionally, the fact that Mr. DeCava is represented by counsel does not detract from the ALJ's responsibility. *Tankisi*, 521 Fed. Appx. at 33 n.1 ("The Commissioner observes that [the claimant] had an attorney during the hearing process, and that he submitted evidence from medical sources (but not opinion evidence) on her behalf. . . Naturally, counsel has a responsibility to bring all favorable evidence to the ALJ's attention. But counsel's responsibilities do not derogate from the ALJ's responsibility to investigate.") (internal citations omitted).

concluded that [the claimant] was not completely credible because his statements were inconsistent with his RFC. Since that RFC as found by the Commissioner is not supported by substantial evidence, the ALJ is directed to re-assess this credibility assessment on remand."); *see also Demera v. Astrue*, 2013 WL 391006, at *4 (E.D.N.Y. Jan. 24, 2013) ("[A]fter the ALJ reassesses the opinions of the four treating physicians and obtains additional information as needed to resolve any inconsistencies or ambiguities, the ALJ must likewise reassess the credibility of [the claimant's] subjective complaints.").

**IV. Conclusion**

For the reasons set forth above, Mr. DeCava's motion, ECF No. 20, is GRANTED and the Commissioner's motion, ECF No. 22, is DENIED. The case is hereby REMANDED.

IT IS SO ORDERED.

/s/ MICHAEL P. SHEA

Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        January 14, 2019